[Cite as *Dowling v. Ohio Casino Control Comm.*, 2022-Ohio-2698.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Arthur Dowling, | : | |
| Appellant-Appellant, | : | No. 21AP-646 |
| | | (C.P.C. No. 21CV-3405) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Casino Control Commission, | : | |
| Appellee-Appellee. | : | |
| NFA Wholesale, LLC, | : | |
| Appellant-Appellant, | : | No. 21AP-647 |
| | | (C.P.C. No. 21CV-3403) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Casino Control Commission, | : | |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on August 4, 2022

**On brief:** *Starkey & Runkle, LLC, Ronald K. Starkey*, and *Megan E. Chezosky*, for appellants. **Argued:** *Ronald K. Starkey*.

**On brief:** *Dave Yost*, Attorney General, and *Joseph E. Schmansky*, for appellee. **Argued:** *Joseph E. Schmansky*.

APPEALS from the Franklin County Court of Common Pleas

LUPER SCHUSTER, P.J.

{¶ 1} Appellants, Arthur Dowling and NFA Wholesale, LLC, appeal from a decision and entry of the Franklin County Court of Common Pleas affirming the adjudication order

of appellee, Ohio Casino Control Commission ("commission"), that denied appellants' requests for skill-based gaming licensure.  For the following reasons, we affirm.

## I.  Facts and Procedural History

{¶ 2}  In August 2018, NFA applied to the commission for a skill-based amusement machine type-C operator license and Dowling applied to the commission for a skill-based amusement machine key employee license.  Dowling is the statutory agent for NFA.  The commission conducted suitability investigations to determine appellants' eligibility for licensure. Following the investigations, the commission issued separate notices of opportunity for hearing, both dated November 2, 2020, to NFA and Dowling notifying them of the commission's intent to deny the license applications.  As to Dowling, the commission notified him he had failed to prove his suitability for licensure by clear and convincing evidence, as required by Ohio Adm.Code 3772-50-05.  The bases for the intended denial were:

> 1) Violation of Ohio Adm.Code 3772-50-03 or 3772-50-05 by answering "NO" to Application Question 5 when you should have answered "YES" because you have been named as a defendant in a civil legal action involving gaming, gambling, fraud, or deceptive trade practices in the United States District Court, Northern District of Ohio, on March 9, 2011;
>
> 2) You had gambling or gaming machines seized or impounded from an establishment you owned or operated by law enforcement in Barberton, Ohio, on July 9, 2005;
>
> 3) You were arrested for or charged with Operating a Gambling House or Gambling, on July 9, 2005, in the Municipal Court of Barberton, Ohio; or
>
> 4) You are the 100% owner or sole key employee of NFA Wholesale, which failed to establish its suitability for licensure by clear and convincing evidence, as required by Ohio Adm.Code 3772-50-07 and described in the Notice for Opportunity for Hearing (Case No. 2020-SLIC-212).

(21AP-646 Nov. 2, 2020 Comm. Notice at 1, Record of Proceedings at 8.)

{¶ 3} As to NFA, the commission notified NFA it had failed to prove its suitability for licensure by clear and convincing evidence as required by Ohio Adm.Code 3772-50-07. The commission informed NFA that the bases for the intended denial were:

> 1) Violation of Ohio Adm.Code 3772-50-03 or 3772-50-07 by answering "NO" to Application Question 8 when you should have answered "YES" because you have been named as a defendant in a civil legal action involving gaming, gambling, fraud, or deceptive trade practices in the United States District Court, Northern District of Ohio, on March 9, 2011;
>
> 2) You had gambling or gaming machines seized or impounded from your premises by law enforcement in Barberton, Ohio, on July 9, 2005; or
>
> 3) Arthur Dowling, your sole key employee or 100% owner, failed to establish his suitability for licensure by clear and convincing evidence, as required by Ohio Adm.Code 3772-50-05 and described in the Notice for Opportunity for Hearing (Case No. 2020-SLIC-213).

(21AP-647 Nov. 2, 2020 Comm. Notice at 1, Record of Proceedings at 1.)

{¶ 4} NFA and Dowling both requested a hearing. The commission then held a joint hearing before a hearing examiner on January 21, 2021. Following the presentation and submission of evidence, the hearing examiner prepared a March 4, 2021 report and recommendation recommending the commission deny appellants' applications. Specifically, the hearing examiner found that the evidence Dowling submitted on his own behalf was not enough to establish, by clear and convincing evidence, his suitability for licensure when weighed against his incorrect answers on his application, his conduct in selling counterfeit items in violation of law in 2011, his actions that caused him to be charged with gambling offenses in 2005, and his knowledge that any false or misleading answers, misrepresentations, or omissions on his applications was grounds for denial of a license. Thus, the hearing examiner concluded Dowling failed to establish his suitability for licensure and, therefore, NFA additionally could not establish its suitability for licensure since Dowling is identified as NFA's key employee.

{¶ 5} Both NFA and Dowling then filed objections to the report and recommendation. The commission considered appellants' objections and ultimately, in a May 19, 2021 final order, adopted the report and recommendation without modification.

{¶ 6} Pursuant to R.C. 119.12, NFA and Dowling both timely appealed the commission's final order to the court of common pleas. The common pleas court consolidated the cases and, on November 5, 2021, issued a decision and entry affirming the commission's adjudication order. In the decision and entry, the common pleas court examined the evidence in the record and concluded there is reliable, probative, and substantial evidence to support the commission's May 19, 2021 order denying NFA's and Dowling's applications for licensure and that the order is in accordance with law. Appellants timely appeal. This court consolidated the cases for purposes of appeal.

## II. Assignment of Error

{¶ 7} Appellants assign the following error for our review:

> The trial court erred in finding that the Order was based on reliable, probative, and substantial evidence and in accordance with law.

## III. Standard of Review and Applicable Law

{¶ 8} R.C. 119.12 governs an appeal from an adjudication of the commission. *Smith v. Ohio Casino Control Comm.*, 10th Dist. No. 19AP-237, 2019-Ohio-4870, ¶ 10, citing *Zingale v. Ohio Casino Control Comm.*, 8th Dist. No. 101381, 2014-Ohio-4937; R.C. 119.12(A)(2)(b). In reviewing an order of an administrative agency under R.C. 119.12, a common pleas court must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and whether the order is in accordance with law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110 (1980). The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " *Lies v. Ohio Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). The common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but "the findings of the agency are by no means conclusive." *Conrad* at 111. On questions of law, the common pleas court conducts a de novo review, exercising its independent judgment in determining whether the administrative order is " 'in

accordance with law.' " *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993), quoting R.C. 119.12.

{¶ 9} An appellate court's review of an administrative decision is more limited. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). The appellate court is to determine only whether the common pleas court abused its discretion. *Id.*; *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 218 (1983). An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore* at 219. On review of purely legal questions, however, an appellate court has de novo review. *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418, ¶ 15 (10th Dist.).

## IV. Discussion

{¶ 10} In their sole assignment of error, appellants argue the common pleas court erred in finding that the commission's order denying NFA's and Dowling's applications for licensure was supported by reliable, probative, and substantial evidence and was in accordance with law. We will consider the denial of Dowling's application and NFA's application separately.

### A. Dowling's Application for Licensure and Denial

{¶ 11} In order to conduct or participate in conducting skill-based amusement machine gaming in Ohio, the machine operator, vendor, key employee, or location must first obtain a license from the commission. Ohio Adm.Code 3772-50-03(A). Upon submission of the application, the commission uses the information provided as the basis for an application of suitability for licensure. Ohio Adm.Code 3772-50-03(C).

{¶ 12} Dowling applied for a skill-based amusement machine key employee license pursuant to Ohio Adm.Code 3772-50-05. Under the terms of the administrative code, the applicant bears the burden of establishing, by clear and convincing evidence, the applicant's suitability for licensure. Ohio Adm.Code 3772-50-05(B). In determining whether to grant the license, the commission considers the following factors:

> (1) Whether the applicant or licensee possesses good character, honesty, and integrity;
>
> (2) Whether the applicant or licensee possesses financial stability, integrity, and responsibility;
>
> (3) The criminal history of an applicant or licensee;

(4) The extent to which the applicant or licensee has cooperated with the commission;

(5) Whether the applicant or licensee has provided accurate and complete information as required by the commission or submitted false or misleading information to the commission;

(6) If the applicant or licensee has shown a disregard of or otherwise failed to comply with the laws and regulations of this state or any other jurisdiction;

(7) If awarding or maintaining a license would undermine the publics confidence in skill-based amusement machine gaming in this state; and

(8) If the applicant or licensee has been indicted, convicted, or pleaded guilty or no contest concerning any criminal offense under the laws of any jurisdiction, excluding minor traffic violations.

Ohio Adm.Code 3772-50-05(C)(1) through (8).

{¶ 13} At the hearing, Dowling testified he had served in the military from 1964 to 1967 before spending about 20 years as a shoe salesman. He then spent 11 years as the chief fundraiser for the Cleveland Catholic Diocese. It was during that time that Dowling helped the church run a church bingo operation under the charitable bingo arm of the State of Ohio. After his time with the church, Dowling testified that he started his own bingo supply business, selling bingo equipment to nonprofit bingo groups. Occasionally, Dowling also provided expert witness services based on his bingo supply knowledge for the Internal Revenue Service and the Ohio Attorney General's office.

{¶ 14} Dowling testified that in either 2002 or 2003 he started a skilled game retail store under the name Magic Money in Barberton, Ohio. Dowling operated Magic Money as a sole proprietor. Dowling acknowledged at the hearing that in 2005 law enforcement in Barberton seized gaming machines from him and he was charged in Barberton Municipal Court for violating gambling or gaming laws. The state ultimately dropped those charges, however, and the city of Barberton returned the machines to him.

{¶ 15} Dowling acknowledged that when he filled out the application, he answered "no" to the question of whether he had ever been named in a civil action involving gaming, gambling, fraud, or deceptive trade practices. (21AP-646 Tr. at 98, Record of Proceedings

at 131.)  At the hearing, he agreed that he had, however, been named in a lawsuit in March 2011 involving Coach Incorporated.  Dowling testified he had no intention of concealing the fact that the lawsuit had been filed against him; instead, he stated he did not think the application intended to cover questions about a lawsuit that was not related to gaming. Dowling stated he understood the Coach lawsuit to accuse him of selling products that infringed on Coach's trademark copyright, and he ultimately settled that lawsuit with Coach.  Pursuant to the terms of the settlement, Dowling paid Coach $3,000, surrendered his inventory, agreed not to sell Coach purses in the future without first obtaining a license from Coach, and no party admitted any liability or fault for what happened.  The settlement agreement also stated that Dowling had been selling the counterfeit Coach items from the Magic Money premises.

{¶ 16}  Dowling testified he started NFA in 2013 as an LLC.  When he filed the instant skilled game applications for himself and for NFA, Dowling stated he was required to file both applications online and described himself as "[n]ot at all" computer literate.  (21AP-646 Tr. at 94, Record of Proceedings at 127.)   Dowling testified he believed he had established his own suitability for licensure, having operated a skilled gaming parlor under the previous rules or regulations of the state since the early 2000s.  Additionally, Dowling testified he had never been convicted of a misdemeanor or felony.

{¶ 17} In further support of his suitability, Dowling introduced a letter from the Barberton Chief of Police attesting to Dowling's good character and value to the community. Dowling also testified that he participates in charitable activities with the Barberton City Schools and other nonprofit organizations in his community, and that he worked with the city of Barberton to create local legislation to govern skilled gaming.

{¶ 18} From this evidence, Dowling asserts he satisfied his burden of demonstrating, by clear and convincing evidence, his suitability for licensure.  He asserts, therefore, that the common pleas court abused its discretion when it determined the commission's order was supported by reliable, probative, and substantial evidence.

{¶ 19} Dowling's testimony was not the only evidence at the hearing, however.  The commission also presented its own evidence to support its recommendation of a denial of Dowling's application for licensure.  Specifically, the commission introduced evidence supporting the allegations in the notice of hearing that despite Dowling's "no" response on

the application, he had, indeed, been named as a civil defendant in a federal lawsuit alleging deceptive trade practices against him in 2011. The commission further presented evidence detailing the 2005 criminal charges against Dowling related to operating a gambling house, including the seizure of his gaming machines. Thus, the commission presented evidence that both supported the allegations in the notice of hearing and that is directly relevant to Ohio Adm.Code 3772-50-05(C)(1), (2), (3), (5), (6), and (7).

{¶ 20} Significantly, Dowling does not argue that the allegations in the notice of hearing did not occur or that the commission did not provide evidence related to the factors listed in Ohio Adm.Code 3772-50-05(C). Instead, Dowling argues the common pleas court should have found the commission erred when it weighed the competing evidence. However, Dowling offers no basis for his position other than mere disagreement with the common pleas court's weighing of the evidence. Dowling does not convincingly articulate how the common pleas court abused its discretion in determining he did not satisfy his burden of proving he was suitable for licensure. *See Smith* at ¶ 24 (where the commission proves the allegations in the notice of hearing by a preponderance of the evidence, the burden is on the applicant, in light of the proven factual allegations, "to prove, by clear and convincing evidence, she was otherwise suitable for" the renewal of her licensure).

{¶ 21} Dowling asserts the commission placed too much weight on his inaccurate application answer and did not accord enough weight to the other evidence in favor of his suitability. We are mindful, however, that both the Ohio Administrative Code and the Ohio Revised Code specifically direct the commission to consider the accuracy of the information provided in the license application. Ohio Adm.Code 3772-50-05(C)(5) (requiring the commission to examine "[w]hether the applicant or licensee has provided accurate and complete information as required by the commission or submitted false or misleading information to the commission"); Ohio Adm.Code 3772-50-03(D) ("[a]n incomplete application, or an application containing false, misleading, or omitted information, is cause for administrative action by the commission"); R.C. 3772.10(C)(2) (the commission "shall not * * * issue a * * * key employee * * * license under this chapter to an applicant if * * * [t]he applicant has submitted an application for license under this chapter that contains false information"). Though Dowling testified at the hearing that he did not intend to provide misleading information related to the 2011 civil suit involving deceptive trade

practices, we find no abuse of discretion in the common pleas court's determination that Dowling's own subjective belief about what the questions required was not enough to overcome the ultimate determination of suitability.

{¶ 22} Moreover, Dowling's false answer on the application was not the only evidence that weighed against a finding of suitability. The evidence related to the 2011 Coach lawsuit is indicative of Dowling's overall character and integrity, and the commission is required to consider Dowling's criminal history. That Dowling settled the 2011 lawsuit and that the state ultimately dropped the 2005 criminal charges do not render the commission unable to consider the information in making its suitability determination. It is for the hearing examiner and subsequently the commission to accord whatever evidentiary weight they deem appropriate to the evidence provided, and the common pleas court concluded the commission appropriately determined both the weight assigned to that evidence and the credibility of Dowling's testimony. To the extent Dowling now challenges the weight given to the commission's evidence over his own testimony and supporting evidence, we find no abuse of discretion in the common pleas court's credibility and weight determinations.

{¶ 23} Accordingly, having reviewed the entire record, we find the common pleas court did not abuse its discretion in determining reliable, probative, and substantial evidence supports the commission's decision to deny Dowling's application for licensure, and the commission's decision is in accordance with law.

**B. NFA's Application for Licensure and Denial**

{¶ 24} NFA applied for a skill-based amusement machine type-C operator license pursuant to Ohio Adm.Code 3772-50-07. Under the terms of the administrative code, the applicant bears the burden of establishing, by clear and convincing evidence, the applicant's suitability for licensure. Ohio Adm.Code 3772-50-07(B). In determining whether to grant the license, the commission considers the following factors:

> (1) The reputation, experience, and financial integrity of the applicant or licensee and the applicants or licensees affiliates or affiliated companies;
>
> (2) The reputation, experience, and financial integrity of any person with direct or indirect ownership interest or that

directly or indirectly controls or influences the decision-making of the applicant or licensee;

(3) If the applicant or licensee has filed, or had filed against it, a proceeding for bankruptcy or has ever been involved in any formal process to adjust, defer, suspend, or otherwise resolve the payment of any debt;

(4) If the applicant or licensee is or has been a defendant in litigation involving the applicants or licensees business practices;

(5) Whether the applicant or licensee possesses good character, honesty, and integrity;

(6) Whether and to what extent the applicant or licensee has associated with members of organized crime and other persons of disreputable character;

(7) The extent to which the applicant or licensee has cooperated with the commission;

(8) Whether the applicant or licensee has provided accurate and complete information as required by the commission or submitted false or misleading information to the commission;

(9) If the applicant or licensee or any person that directly or indirectly controls the applicant or licensee has been indicted, convicted, or pleaded guilty or no contest concerning any criminal offense under the laws of any jurisdiction, excluding minor traffic violations;

(10) If the applicant or licensee has been served with a complaint or other notice filed with any public body regarding a payment of any tax, required under federal, state, or local law, that has been delinquent for one or more years;

(11) If the applicant or licensee has shown a disregard of or otherwise failed to comply with the laws and regulations of this state or any other jurisdiction;

(12) If awarding or maintaining a license would undermine the publics confidence in skill-based amusement machine gaming in this state; and

(13) The suitability of any other material person, as determined by the commission.

Ohio Adm.Code 3772-50-07(C)(1) through (13).

{¶ 25} The notice of hearing alleged the commission intended to deny NFA's application based on NFA providing an inaccurate application answer as to whether it had been involved in the Coach litigation in 2011 and based on NFA's having gaming machines seized from its premises in 2005. However, at the hearing, Dowling testified that NFA was a separate entity from Magic Money and was not incorporated until 2013. Thus, Dowling asserts the commission could not substantiate its allegations against NFA and therefore erred in denying NFA's application for licensure.

{¶ 26} Based on the evidence presented at the hearing, Dowling is correct that the commission's notice of hearing contained two grounds for denial that it could not substantiate. Indeed, the hearing examiner acknowledged as much in the report and recommendation and did not recommend denial of the application on those grounds. The commission adopted the report and recommendation in full, and thus did not deny the application based on the first two allegations in the notice of hearing. The common pleas court additionally acknowledged that the commission did not pursue the first two allegations as grounds for denial once it was clear that NFA did not exist as a legal entity in either 2005 or 2011.

{¶ 27} Nonetheless, Dowling's argument both before the common pleas court and before this court on appeal ignores the third basis in the notice of hearing for the intended denial: that NFA's sole key employee could not establish his suitability. Pursuant to Ohio Adm.Code 3772-50-16(F), "[n]o * * * skill-based amusement machine operator * * * shall be owned by or employ, contract with, or otherwise accept the services of any skill-based amusement machine key employee other than a skill-based amusement machine key employee licensed by the commission under this chapter." Relatedly, among the factors the commission must consider in determining whether to grant a type-C skilled-based amusement machine operator license is "[t]he suitability of any other material person." Ohio Adm.Code 3772-50-07(C)(13). Dowling is NFA's sole key employee, and a "material person" for purposes of NFA's license application.

{¶ 28} Here, we have already determined the common pleas court did not abuse its discretion in finding reliable, probative, and substantial evidence supports the commission's denial of Dowling's application for licensure. Where Dowling could not establish his suitability for a key employee license, there was ample evidence for the commission to determine NFA could not demonstrate its own suitability for licensure in the absence of a properly licensed key employee. Thus, the common pleas court did not abuse its discretion in finding reliable, probative, and substantial evidence supports the commission's denial of NFA's application for a type-C skill-based amusement machine operator license.

{¶ 29} Accordingly, because the common pleas court did not abuse its discretion in finding reliable, probative, and substantial evidence supports the commission's order denying both Dowling's and NFA's applications for licensure and the order is in accordance with law, we overrule appellants' sole assignment of error.

## V. Disposition

{¶ 30} Based on the foregoing reasons, the common pleas court did not abuse its discretion in determining reliable, probative, and substantial evidence supported the commission's order denying both Dowling's application for a skill-based amusement machine key employee license and NFA's application for a skill-based amusement machine type-C operator license. Having overruled appellants' sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and DORRIAN, JJ., concur.

———————————